# IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Jack C. HORTH, Attorney at Law.

Supreme Court

*No. 87–1252–D. Submitted on briefs January 31, 1989.—Decided February 24, 1989.*

(Also reported in 435 N.W.2d 732.)

For Attorney Jack C. Horth there was a brief by *Raymond M. Clark* and *Law Offices of Raymond M. Clark, S.C.,* Milwaukee.

For the Board of Attorneys Professional Responsibility there was a brief by *Daniel L. Shneidman* and *Shneidman, Myers, Dowling & Blumenfield,* Milwaukee.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license revoked.*

This is an appeal by Attorney Jack C. Horth from the referee's recommendation that his license to practice law in Wisconsin be revoked as discipline for numerous acts of professional misconduct. Rather than revocation, Attorney Horth argued that his misconduct warrants no more severe sanction than a suspension of his license for one year.

As detailed below, Attorney Horth's misconduct was extremely serious. It occurred over a period of more than six years and included several instances of conversion of funds clients had entrusted to him and deliberate misrepresentations of fact to clients and to a court. Notwithstanding that Attorney Horth has made restitution to his clients of funds he had converted, the totality of the misconduct warrants the imposition of the most severe disciplinary sanction, not only as an appropriate response to the gravity of misconduct, but also as a deterrent to other attorneys who might engage in like misconduct.

The foundation of an attorney's relationship with clients and the legal system is trust. An attorney who violates that trust by misappropriating funds of clients and misrepresenting facts to the court demonstrates an unfitness to be entrusted with the responsibilities of the profession. When that failing is established to the extent it has been here, there is no other response than to revoke the attorney's license to practice law in the

state. The protection of the public and of the legal system demands it.

Attorney Horth was admitted to practice law in Wisconsin in 1960 and maintains his office in Brookfield, Waukesha county. He admitted by stipulation the acts of professional misconduct alleged in the complaint filed by the Board of Attorneys Professional Responsibility. Based on that stipulation and evidence presented at a disciplinary hearing, the referee, Attorney Rudolph P. Regez, made findings of fact and conclusions of law as follows.

(1) In October, 1978, a woman retained Attorney Horth to represent her concerning injuries she received in a motorcycle accident. In June, 1980, Attorney Horth wrote to the attorney representing a hospital which had provided medical treatment to his client that he would "protect" the hospital's bill and withhold from any settlement of his client's claim funds to pay that bill and, further, would not pay any settlement money to his client until the hospital bill had been paid.

In August, 1981, Attorney Horth filed an action on his client's claim in circuit court and soon thereafter advised the defendant driver's insurer that he wished to discuss settlement, adding that he had not yet served the summons and complaint on the driver or the insurer. The service he subsequently made occurred well beyond the time required by law.

Subsequently, although it had filed a motion to dismiss the action on the ground of untimely service, the insurer told Attorney Horth that, because of its past relationship with him, it would pay approximately $5300 in settlement of his client's claim but would not waive its defense of untimely service. The insurer sent Attorney Horth a settlement check in April, 1982, but Attorney Horth did not send that check to his client

564

until November 16, 1982. When he did, he instructed his client to sign the check, as well as a release he sent with it, and return them to him. He told her that the settlement would pay all of her medical expenses and that he would arrange for her to be paid another $4000, "less costs and the like, as soon as possible." After the client signed and returned the check and release, Attorney Horth deposited the proceeds into his trust account and the action was dismissed.

Attorney Horth never told his client he had failed to timely serve the pleadings in the action or that the funds he had sent her constituted a final settlement of her claim. Instead, he advised her that he was continuing to work on the matter, that he would not charge her for his services and that, if she waited six years, she would not have to pay any medical bills not covered by the settlement funds. Periodically, Attorney Horth sent his client money totaling $1610 and paid on her behalf a debt in the amount of $1000.

On September 7, 1983, Attorney Horth wrote the client that he had paid $2491.45 in medical bills, but in fact the bills he had paid totaled only $1819.20. Regarding two unpaid medical bills totaling approximately $2350, Attorney Horth advised his client to do nothing and wait to see if any pressure would be brought to bear on her for payment. He also suggested that he seek to compromise those claims, but he made no attempt to do so.

When Attorney Horth informed the hospital's attorney on September 20, 1983, that the case had been settled, the hospital requested payment of its $1247 bill, relying on Attorney Horth's prior representation that he would protect the hospital's interests and withhold funds from any settlement to pay that bill. However, Attorney Horth had not withheld any funds

from the settlement to pay the hospital's bill; by April of 1984, he had disbursed the entire amount of the settlement he had received. Attorney Horth did not pay the hospital's bill until July 31, 1985, and then only after the hospital had commenced an action against his client for payment.

In March, 1984, the client retained other counsel to represent her. Attorney Horth then admitted he had not properly commenced the action on the client's claim and he agreed to pay her for the loss she suffered because of his mistake by paying her $10,000, less the money he had already given to her out of the settlement proceeds. It was his position that the limit of the applicable insurance policy was $15,000, of which, had the action been successful, he would have received one-third as his fee.

In all, Attorney Horth made disbursements to or on behalf of his former client totaling $8753.79; thus, pursuant to his agreement to pay her $10,000, he owed her $1246.21. In addition, two medical bills totaling approximately $1700 remained unpaid. Although Attorney Horth had agreed to provide his former client an accounting of all bills he paid on her behalf, he has never done so.

During its investigation of this client's grievance, the Board asked Attorney Horth to respond and requested specific information concerning his payment of the client's medical bills. Attorney Horth submitted a partial accounting but failed to provide trust account records the Board had requested on numerous occasions.

The referee concluded that Attorney Horth neglected his client's legal matter, in violation of SCR 20.32(3)(1986), engaged in conduct involving dishonesty, deceit and misrepresentation, in violation of SCR

20.04(4)(1986), failed to promptly pay client funds upon request, in violation of SCR 20.50(2)(d)(1986), failed to account to the client for funds belonging to the client, in violation of SCR 20.50(2)(c)(1986), failed to cooperate with the Board's investigation, in violation of SCR 22.07(2) and (3), and failed to maintain or produce client trust account records, in violation of SCR 11.05(2).

(2) In December, 1980, Attorney Horth was retained to probate an estate valued at approximately $22,000 and consisting of cash, stock, bonds and a $7000 home, which was sold in October, 1981. He filed a proceeding for intestate administration and all claims and expenses of the estate were paid and approximately $1800 had been disbursed to the heirs by January, 1982.

In July, 1982, the register in probate advised Attorney Horth that the estate had been open for more than 19 months and asked that it be closed within 30 days or that he notify the court of a date when it would be closed. Attorney Horth wrote that he would file the inventory "forthwith" and expected to close the estate within 60 days, stating that he had filed the inheritance tax return and was awaiting receipt of an order determining inheritance tax. In fact, however, he had not filed the inheritance tax return and did not do so until six weeks later. After additional delays, the estate was closed on November 8, 1984.

The referee concluded that Attorney Horth engaged in conduct involving dishonesty, deceit and misrepresentation, in violation of SCR 20.04(4)(1986), knowingly made a false statement of fact to the court, in violation of SCR 20.36(1)(e)(1986), and neglected his client's legal matter, in violation of SCR 20.32(3)(1986).

(3) On April 29, 1985, Attorney Horth deposited into his trust account $3500 belonging to a client he

567

represented in a divorce action. Those funds were to be paid to the client's former husband as part of a property division agreement. On the day of deposit, Attorney Horth withdrew and converted to his own use $3250 of those funds. He later paid the amount due the client's former husband with personal funds he had deposited into his trust account.

The referee concluded that Attorney Horth engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4)(1986), and that his conversion of client funds and commingling of his own funds with client funds in his trust account violated SCR 20.50(1) and (20)(d)(1986) and SCR 11.05(1).

(4) On May 16, 1986, Attorney Horth deposited into his trust account $7500 belonging to a client in a probate matter to be used to pay inheritance tax in an estate. During the next 11 days, Attorney Horth withdrew those funds and converted them to his own use. He did not file any tax returns for the estate or pay any taxes.

In September, 1986, the client obtained other counsel and demanded the return of the $7500. In January, 1987, Attorney Horth gave the former client a check for approximately $2050, which he said constituted the balance of the funds after payment of the inheritance tax. Because at the time he issued that check, the trust account on which it was drawn had a balance of only $82.24, the check was dishonored. Later that same month Attorney Horth paid the former client $7500 with personal funds.

On May 16, 1986, Attorney Horth deposited into his trust account $155 he received from one of the heirs of the estate to be used to pay that heir's share of inheritance tax. Shortly thereafter Attorney Horth

568

withdrew those funds by check payable to himself. In January, 1987, he repaid the $155 to the heir with personal funds.

The referee concluded that Attorney Horth engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4)(1986), and that his conversion of client funds to his own use violated SCR 20.50(2)(d)(1986).

(5)   On May 27, 1986, Attorney Horth deposited into his trust account $1001 belonging to a divorce client. Pursuant to an agreement between the parties, the attorney for his client's spouse was to receive $303.50 of those funds as fees and Attorney Horth was to keep the balance as his fee. On the day of deposit, Attorney Horth withdrew and converted to his own use all but $26.26 of those funds. Despite repeated requests from the attorney entitled to receive a portion of those funds, Attorney Horth did not make the payment agreed upon.

The referee concluded that Attorney Horth engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4)(1986), and that his conversion of client funds to his own use violated SCR 20.50(2)(d)(1986).

(6)   On August 27, 1986, Attorney Horth deposited into his trust account $2000 received from a business client to pay federal social security and employee withholding. By September 9, 1986, Attorney Horth had withdrawn those funds from his trust account and converted them to his own use.

This client had retained Attorney Horth to prepare and file state and federal corporate tax returns. For approximately one year Attorney Horth did not return numerous telephone calls from his client concerning the

tax matter and he failed to file any tax returns on his client's behalf.

The referee concluded that Attorney Horth engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4)(1986), and that his conversion of client funds to his own use violated SCR 20.50(2)(d)(1986).

(7) Attorney Horth was retained to pursue collection on a note. Pursuant to an agreement reached in litigation in March of 1986, Attorney Horth received approximately $3500, which he was to pay to his client in four periodic payments. Attorney Horth deposited only $850 of those funds into his trust account and all but one of the periodic payments he made to his client came from another client's funds in his trust account.

Although the referee's report contained no conclusion of law relating to these factual findings, we conclude that this conduct violated SCR 20.04(4)(1986) and 20.50(1)(1986) and 11.05(1).

(8) On November 26, 1986, Attorney Horth deposited into his trust account approximately $3300 in proceeds from a real estate sale to be paid to his clients. Attorney Horth used approximately $1700 of those funds to cover a check issued to pay another client. On December 15, 1986, Attorney Horth transferred into his trust account from a second trust account $1800 belonging to a third client to cover a check issued to his clients as proceeds of the real estate sale.

The referee concluded that Attorney Horth engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4)(1986), and that his use of client funds to pay obligations owed to other clients violated SCR 20.50(2)(d)(1986),

(9) On April 3, 1987, Attorney Horth deposited $225 into his trust account, $135 of which had been

received from a client to be used to purchase a title insurance policy for a house the client was buying; the remaining $90 was his personal funds. Attorney Horth used all those funds to pay personal expenses. By April 8, 1987, that trust account was overdrawn by approximately $770. On July 7, 1987, he issued a check to the title company drawn on another trust account, but that trust account had been closed the previous month and the check was dishonored. Attorney Horth later paid the $135 to his client.

The referee concluded that Attorney Horth engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4)(1986), and that his use of trust account funds to pay personal expenses and his deposit of personal funds into his trust account violated SCR 20.50(2)(d)(1986) and SCR 11.05(1).

(10) At the end of May, 1985, Attorney Horth's trust account was overdrawn by approximately $125. He then deposited $1500 of his own funds and disbursed approximately $960 on behalf of three clients, despite the fact that no funds belonging to those clients were on deposit in that account. On April 9, 1987, Attorney Horth deposited $900 of his personal funds into his trust account to cover an overdraft amounting to $778. A few days later, he deposited an additional $100 of his personal funds into that account. He used those funds to pay personal expenses and made cash withdrawals in excess of the funds on deposit, thus overdrawing the account by approximately $790. The account remained overdrawn from April 16 to August 18, 1987, when he deposited the funds needed to close the account.

The referee concluded that such conduct violated SCR 11.05(1) and 20.50(1)(1986).

(11) At the end of July, 1986, Attorney Horth's trust account was again overdrawn, this time in the amount of $3.44. Attorney Horth then deposited into that account $11,566.28 in proceeds of a real estate transaction belonging to a client. He was to use $11,000 of those funds to purchase an annuity for the client and was to pay her the balance. She received the balance on the day following deposit, but from the remaining $11,000 Attorney Horth issued checks to himself totaling $5425 and converted that amount to his own use. He also disbursed from those funds just over $2800 to three other clients. Attorney Horth then sent a trust account check to the insurance company to purchase the annuity but that check was returned three times because of insufficient funds in the trust account. When the check finally cleared, it was paid with funds belonging to other clients of Attorney Horth and with his own funds.

The referee concluded that Attorney Horth engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4)(1986), and that his commingling of personal and client funds in his trust account violated SCR 11.05(1) and 20.50(1)(1986).

(12) In December, 1986, Attorney Horth deposited into his trust account $8400, the proceeds of a client's insurance claim. The client was to receive approximately $7000 of those funds but Attorney Horth used them to cover the check he had issued to purchase an annuity for another client. When he issued a check to pay the client's insurance claim, his trust account balance was only $163. He then deposited into that account $6900 he had obtained by a personal loan.

The referee concluded that this conduct violated SCR 20.04(4)(1986), 20.50(1) and (2)(d)(1986) and 11.05(1).

(13) In 1983, Attorney Horth received approximately $1200 in proceeds from the sale of the home of a client he was representing in a divorce action. Attorney Horth told his client and opposing counsel in that action that he had deposited those funds into his trust account and it was later agreed that they would be divided evenly between the parties. When the divorce matter was concluded in January, 1985, opposing counsel made repeated requests for payment of his client's portion of the funds, but Attorney Horth did not respond. Instead, he withdrew the funds from his trust account and converted them to his own use. In December, 1986, he paid his client approximately $400 of his own funds, which he stated was the balance of the funds belonging to the client after deduction of attorney fees and costs; he did not account to his client for the remaining funds and did not make any payment to his client's former spouse.

The referee concluded that Attorney Horth's conduct violated SCR 20.04(4)(1986) and 20.50(2)(d)(1986).

(14) In 1987 Attorney Horth deposited into his trust account approximately $1325 in proceeds of the settlement of a client's claim. Attorney Horth had previously agreed with the client that any recovery would be applied toward his attorney fees. Accordingly, Attorney Horth disbursed all of the funds to himself, but he never advised his client of the receipt of the funds, nor did he account for their disbursement.

The referee concluded that Attorney Horth's failure to account to his client for the funds violated SCR 20.50(2)(c)(1986).

(15) In addition to the matters set forth above, on numerous occasions between April, 1985, and June, 1987, Attorney Horth deposited personal funds amounting to approximately $7300 into his trust account to pay obligations to several clients. The referee concluded that this conduct violated SCR 11.05(1) and 20.50(1)(1986).

(16) In June of 1984 Attorney Horth deposited $10,000 of a corporate client's funds into his trust account, despite the fact that all of the corporation's funds were to be deposited into a corporate account. Attorney Horth was an officer, director and legal counsel of that corporation. He subsequently made disbursements from his trust account on behalf of the corporation but failed to adequately account to the corporation for the funds.

Following an audit of the corporation's finances in October, 1984, Attorney Horth altered several checks he had issued on behalf of the corporation by changing notations thereon to show that the checks had been issued for attorney fees rather than for corporation expenses and vice versa. Also, Attorney Horth entered notations on other checks after they had been returned from the bank, purporting to indicate thereon the purpose for which they had been issued.

Although he had been authorized by the corporation to pay himself fees for legal services in amounts of up to $2500 without first obtaining the corporation's approval, five of Attorney Horth's statements for legal services and the checks issued in payment thereof exceeded that dollar limit and he prepared the statements for his services subsequent to the dates set forth on the statements purporting to show when they were prepared.

At one point, Attorney Horth withdrew approximately $7600 in cash from the corporation's account. Despite requests from the corporation to do so, he failed to account for those funds.

In his work for the corporation, Attorney Horth twice traveled to West Germany. The expenses for those trips were paid by the corporation, despite the fact that during the first trip, hotel and meal expenses had been paid by the West German manufacturer with whom the corporation's representatives were meeting. The corporation asked Attorney Horth to account for the expenses incurred for that trip, but he failed to do so fully.

In February of 1985 Attorney Horth was removed as officer, director and legal counsel of the corporation and was asked to return all corporate funds and documents. Nevertheless, from then until June of 1985 he continued to disburse funds on behalf of the corporation, although he was not authorized to do so.

The referee concluded that Attorney Horth's failure to adequately account to his client for funds and his failure to deposit those funds in a trust account violated SCR 11.05(1) and 20.50(2)(c)(1986). The referee further concluded that his unauthorized disbursements of client funds, failure to return client funds upon request, payment to himself of legal fees without authorization and his altering of checks violated SCR 20.04(4)(1986), 20.16(1)(b)(1986) and 20.50(2)(d)(1986). Further, Attorney Horth's failure to account to the client for expenses paid on the client's behalf violated SCR 20.50(2)(c)(1986).

(17) In its investigation of this matter, the Board of Attorneys Professional Responsibility asked Attorney Horth to provide various documents and information, but he failed to do so. He also failed to submit his trust account records the Board had requested. The

referee concluded that Attorney Horth's failure to provide information and produce documents and trust account records to the Board violated SCR 11.05(2) and 22.07(2) and (3).

In his report of these findings and conclusions, the referee noted that Attorney Horth submitted receipts showing that he had made full restitution to cover trust fund shortages. The referee also noted that, while the disciplinary proceeding was pending, Attorney Horth experienced considerable stress as a result of problems encountered by members of his immediate family, to the extent that Attorney Horth was hospitalized on the day first scheduled for hearing in this proceeding. Following that hospitalization, specific treatment was prescribed, but Attorney Horth had not undertaken that treatment, at least not as of the date of the hearing before the referee.

Notwithstanding these observations, the referee recommended that Attorney Horth's license to practice law be revoked as discipline for his misconduct:

> [Attorney Horth], in making restitution to all parties, has acted meritoriously and his family situation creates a mitigating circumstance. These factors could well justify the Court in imposing a lengthy suspension rather than revocation.
>
> Nevertheless, on the record and considering the precedents of similar disciplinary cases, I am of the opinion that the Board's recommendation of revocation is appropriate.

Arguing that his misconduct warrants only a one-year suspension of his license, Attorney Horth took the position that license revocation is warranted only when there has been a long-established pattern of misconduct, when large amounts of restitution are required or

when the attorney has failed to answer the Board's disciplinary complaint or has otherwise not responded in the course of a disciplinary proceeding. Attorney Horth asserted that his misconduct occurred over a period of only two years, during a time when he was suffering a deterioration of health because of difficulties with the corporation in which he was involved. He also argued that, as he has made restitution to those harmed by his misconduct and because he has not been the subject of prior disciplinary proceedings, the discipline to be imposed should be less severe than license revocation.

Contrary to Attorney Horth's position, the specific acts of his misconduct occurred over a period from 1981 through 1987. During that time, he converted to his own use funds of at least nine clients totaling nearly $30,000. Thus, Attorney Horth has established a pattern of conversion and misuse of client funds, as well as deliberate misrepresentation to clients and the courts, neglect of client matters and failure to maintain trust account records. Added to that, he has failed to cooperate with the Board in its investigation of his misconduct.

Moreover, Attorney Horth's misconduct necessitated substantial monetary restitution, which he did not make until at or immediately following the disciplinary hearing. Further, he presented no medical evidence establishing that he had suffered an illness that could have adversely affected his professional work and failed to show any causal connection between his personal and family health problems and his misconduct.

On the basis of the referee's findings of fact and conclusions of law, which we here adopt, it is our determination that the appropriate discipline for Attor-

ney Horth's professional misconduct is the revocation of his license to practice law in Wisconsin.

IT IS ORDERED that the license of Jack C. Horth to practice law in Wisconsin is revoked effective March 13, 1989.

IT IS FURTHER ORDERED that within 90 days of the date of this order Jack C. Horth pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that Jack C. Horth comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.