IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Robin A. NELSON, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant,

v.

Robin A. NELSON, Respondent.

Supreme Court

*No. 98–3368–D. Filed April 27, 1999.*

(Also reported in 592 N.W.2d 194.)

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Robin A. Nelson and the Board of Attorneys Professional Responsibility (Board) pursuant to SCR 21.09(3m)[1] setting forth findings of fact and conclusions of law concerning Attorney Nelson's professional misconduct in dealing with funds of clients held in her law firm's trust account and fees belonging to the firm. The parties also stipulated to a two-year suspension of Attorney Nelson's license to practice law as discipline for that misconduct.

---

[1] SCR 21.09 provides, in pertinent part: ·

**Procedure.**

. . .

(3m)   The board may file with a complaint a stipulation by the board and the respondent attorney to the facts, conclusions of law and discipline to be imposed. The supreme court may consider the complaint and stipulation without appointing a referee. If·the supreme court approves the stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline. If the supreme court rejects the stipulation, a referee shall be appointed pursuant to sub. (4) and the matter shall proceed pursuant to SCR chapter 22. A stipulation that is rejected has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the board's prosecution of the complaint.

¶ 2.  We approve the stipulation and determine that the seriousness of Attorney Nelson's misconduct warrants the suspension of her license to practice law for two years. Attorney Nelson's repeated withdrawals of client funds for her own use, the steps she took to conceal her conduct from the law firm where she was employed, and her retention and use of fees to which the firm was entitled constitute an egregious breach of her fiduciary duty not only to her firm's clients but also to the lawyers with whom she was engaged in the practice of law. In addition to that suspension, we impose the condition of reinstatement of her license to which the parties stipulated—that Attorney Nelson provide evidence of treatment for and recovery from her gambling disorder.   .

¶ 3.  Attorney Nelson, who has not been the subject of a prior disciplinary proceeding, was admitted to the practice of law in Wisconsin in 1989 and joined a law firm with offices in Menomonie in 1993. After becoming a shareholder in that firm at the beginning of 1998, she assumed primary responsibility for supervising and balancing the firm's Menomonie office trust account, which was separate from the trust account the firm maintained for each of its other two locations.

¶ 4.  In early February 1998 the trust account held $1580 in proceeds of an Internal Revenue Service refund check in a client's matter. On February 10, 1998, Attorney Nelson wrote to herself and cashed a trust account check in the amount of $1580, showing on the check stub that it was a distribution of the IRS refund. More than three months later, Attorney Nelson sent the client her personal check in the amount of $946.83, misrepresenting in a cover letter that she wrote the check on her personal account because the law firm was reordering trust account checks, and she

242

did not want the client to have to wait for her share of the refund. Attorney Nelson personally paid the balance of the IRS check to the attorney for the adverse party in the client's matter.

¶ 5.  During the first two weeks of March 1998, Attorney Nelson wrote to herself and cashed two trust account checks, each in the amount of $3500, misrepresenting on the check stubs that they were written to her law firm as fees related to another client. At her direction, Attorney Nelson's legal assistant subsequently marked one of the check stubs "void."

¶ 6.  On March 16, 1998, $50,000 was deposited in the trust account for a client, and a check in the amount of $44,700 was written to and negotiated by the client. Another check was written to the firm for the balance—$5300—for that client's costs and fees. That check was delivered to the receptionist at one of the firm's other offices but before it was given to the firm's bookkeeper, Attorney Nelson instructed the receptionist to destroy it. Attorney Nelson then wrote a trust account check to herself in the amount of $5300, with the check stub showing that the check was voided. On April 14, 1998, Attorney Nelson gave the bookkeeper her personal check payable to the law firm in the amount of $5300 and labeled as fees for that client.

¶ 7.  Attorney Nelson made entries on trust account check stubs indicating that $12,000 was deposited on behalf of a client March 28, 1998, when in fact there had been no such deposit. On that same date, Attorney Nelson wrote a trust account check for $6000 payable to herself, with the check stub showing that the check had been made payable to the client. On April 20, 1998, she replaced the funds by making a $6000 cash deposit to the trust account.

¶ 8.   When the law firm discovered discrepancies in its trust account records toward the end of May, 1998, Attorney Nelson acknowledged that she had "borrowed" $5300 and $6000, which she had since repaid, and that she also had taken two $3500 withdrawals. In addition to withdrawing trust account funds, she reported five instances in which she took a total of approximately $2300 of legal fees that belonged to the law firm and concealed having done so by altering the firm's billing records. Attorney Nelson then repaid the firm in full for the trust account funds and fees she had taken and voluntarily resigned from the law firm.

¶ 9.   The parties stipulated that the above conduct constituted Attorney Nelson's dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c),[2] failure to hold in trust, separate from her own property, funds belonging to clients, in violation of SCR 20:1.15(a), and failure to maintain trust account records as required by SCR 20:1.15(e).[3] In agreeing

---

[2] SCR 20:8.4 provides, in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:

. . .
    (c)   engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

[3] At the time relevant here, SCR 20:1.15 provided, in pertinent part:

**Safekeeping property**
    (a)   A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which account shall be clearly designated as "Client's Account" or

that the appropriate discipline for Attorney Nelson's misconduct is a two-year license suspension, the parties noted that Attorney Nelson reported her misconduct to the Board, cooperated fully in its investigation into the matter, and paid the law firm all of the money to which it was entitled.

¶ 10.    In addition to the two-year license suspension, the parties stipulated that as a condition of reinstatement Attorney Nelson be required to produce evidence from a competent addictionologist that her gambling disorder is under control and that she is in compliance with whatever conditions are necessary to enable her to maintain her recovery. That condition is in response to Attorney Nelson's statement in her report to the Board that there was a gambling issue involved in her misconduct. After agreeing to and undergoing a comprehensive evaluative psychological

---

"Trust Account" or words of similar import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. . . .

. . .

(e)    Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. . . .

assessment by a medical expert the Board had suggested, she was diagnosed with pathological gambling—an impulse control disorder. While neither she nor the Board asserted that the gambling disorder in any way constituted a defense to or mitigation of her professional misconduct, the parties agreed to the imposition of the reinstatement condition.

¶ 11. We adopt the findings of fact and conclusions of law set forth in the parties' stipulation. Attorney Nelson's use of funds belonging to clients and to her law firm for her own purposes and her deceitful efforts to conceal that conduct demonstrate that she is not fit to be licensed to represent persons in the legal system. A two-year suspension of her license to practice law is appropriate discipline for her professional misconduct. We note that Attorney Nelson ceased the practice of law in Wisconsin in early 1998 and relocated to Minnesota.

¶ 12. IT IS ORDERED that the license of Robin A. Nelson to practice law in Wisconsin is suspended for a period of two years, effective the date of this order.

¶ 13. IT IS FURTHER ORDERED that Robin A. Nelson comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 14. IT IS FURTHER ORDERED that the reinstatement of Robin A. Nelson's license to practice law is subject to the condition set forth in this opinion.