IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Harvey J. GOLDSTEIN, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Appellant,

v.

Harvey J. GOLDSTEIN, Respondent-Respondent.

Supreme Court

*No. 2007AP2771–D. Oral Argument December 8, 2009.
—Decided April 14, 2010.*

2010 WI 26

(Also reported in 782 N.W.2d 388.)

706

708

For the complainant-appellant there were briefs by *Julie M. Scott* and the *Office of Lawyer Regulation,* Madison, and oral argument by *Julie M. Scott.*

For the respondent-respondent there was a brief by *Martin E. Kohler, Craig S. Powell,* and *Kohler & Hart, LLP,* Milwaukee, and oral argument by *Craig S. Powell.*

¶ 1.   PER CURIAM. The Office of Lawyer Regulation (OLR) appeals the referee's report recommending a one-year suspension of Attorney Harvey J. Goldstein's license to practice law in Wisconsin. The OLR filed a 24–count disciplinary complaint against Attorney Goldstein. John F. Fiorenza was appointed referee.

¶ 2.   Referee Fiorenza found misconduct with respect to Counts 1 through 20, which charged violations stemming from trust account violations and conversion of nearly $70,000 from three probate estates. The parties stipulated the funds have been repaid and that Attorney Goldstein owes interest to two estates totaling $3,066, which he has agreed to pay as restitution.

¶ 3.   Counts 21 through 24 charged violations arising from Attorney Goldstein's communications with and failure to pay a process server. Referee Fiorenza concluded Attorney Goldstein committed misconduct alleged in Count 24; however, he recommended dismissal of Counts 21, 22, and 23 for lack of proof. As discipline, the referee recommended a one-year license suspension and that Attorney Goldstein pay restitution of $3,066 and the costs of this proceeding.

¶ 4.   The OLR raises two arguments on appeal. First, the OLR contends the referee erroneously concluded Attorney Goldstein did not commit misconduct as

709

charged in Count 23.[1] Second, the OLR argues Attorney Goldstein's license to practice law in Wisconsin should be revoked.

¶ 5. We conclude the record supports the referee's findings and conclusions with respect to Attorney Goldstein's misconduct. We conclude the referee's finding, that the record fails to demonstrate misconduct charged in Count 23, is not clearly erroneous. We uphold the referee's determination that Attorney Goldstein committed misconduct charged in Counts 1 through 20 and 24. We conclude the appropriate sanction for Attorney Goldstein's misconduct is a two-year suspension of his license to practice law in Wisconsin. We order Attorney Goldstein to pay $3,066 restitution, together with the cost of this proceeding.

¶ 6. Attorney Goldstein was admitted to practice law in Wisconsin in 1977. He has practiced law in Milwaukee. He has not been subject to previous discipline.

¶ 7. The facts admitted by Attorney Goldstein reveal a scheme by which he used funds belonging to one probate estate to cover the trust account deficits of another, caused by Attorney Goldstein withdrawing funds for his personal and business expenses, including a business venture in Arizona. The matter was complicated by Attorney Goldstein's inability to produce trust account records. Attorney Goldstein claimed, and the referee found, that Attorney Goldstein's records were unintentionally lost in moving and subsequently destroyed due to a computer failure.

¶ 8. The scheme was uncovered by an OLR investigator assigned to investigate a grievance filed by a

[1] The OLR does not challenge the referee's recommended dismissal of Counts 21 and 22.

710

process server. The process server, R.R., complained Attorney Goldstein had not paid approximately $19,000 billed over a number of years for work serving process in numerous collection matters. While investigating this grievance, the OLR reviewed Attorney Goldstein's bank records, which disclosed numerous trust account violations and the misappropriation of probate estate funds.

¶ 9. Based on Attorney Goldstein's admissions and the evidence admitted at the disciplinary hearing, the referee determined the OLR met its burden to prove the following violations. The first six counts involved conversion of probate funds from three estates while Attorney Goldstein was acting as a special administrator and, in one case, a personal representative.

- COUNT 1: By converting at least $19,685.55 from the C.V. Estate while acting as special administrator, Attorney Goldstein violated SCR 20:8.4(b).[2]

- COUNT 2: By converting at least $17,204.20 from the H.G. Estate while acting as personal representative, Attorney Goldstein violated SCR 20:8.4(b).

---

[2] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04-07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06-04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to Chapter 20 of the Wisconsin Supreme Court Rules will be to those in effect prior to July 1, 2007.

SCR 20:8.4(b) states it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

- COUNT 3: By converting $32,561.71 from the S.C. Estate while acting as special administrator, Attorney Goldstein violated SCR 20:8.4(b).

- COUNT 4: By converting at least $19,685.55 from the C.V. Estate while acting as special administrator, Attorney Goldstein violated SCR 20:8.4(c).[3]

- COUNT 5: By converting at least $17,204.20 from the H.G. Estate while acting as special administrator, Attorney Goldstein violated SCR 20:8.4(c).

- COUNT 6: By converting $32,561.71 from the S.C. Estate while acting as special administrator, Attorney Goldstein violated SCR 20:8.4(c).

¶ 10. The next six counts involved trust account and other violations, including the comingling of trust account funds with funds received from Attorney Goldstein's wife and his personal business venture, as follows:

- COUNT 7: By failing to hold in trust at least $19,685.55 belonging to the C.V. Estate while acting as special administrator, Attorney Goldstein violated SCR 20:1.15(a)[4] and SCR 20:1.15(b)(1).[5]

---

[3] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 20:1.15(a) (effective through June 30, 2004) provided, in pertinent part:

> A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. . . .

[5] SCR 20:1.15(b)(1) (effective as of July 1, 2004) provided:

- COUNT 8: By failing to hold in trust at least $17,204.20 belonging to the H.G. Estate while acting as personal representative, Attorney Goldstein violated SCR 20:1.15(a) (effective through June 30, 2004) and SCR 20:1.15(b)(1) (effective as of July 1, 2004).

- COUNT 9: By failing to hold in trust $32,561.71 belonging to the S.C. Estate while acting as special administrator, Attorney Goldstein violated SCR 20:1.15(a) (effective through June 30, 2004) and SCR 20:1.15(b)(1) (effective as of July 1, 2004).

- COUNT 10: By depositing and holding in his trust account at least $66,407.19 in earned fees or cost reimbursements, $5,700 in loans from his wife, and approximately $64,499.88 of the $288,452.57 deposited in connection with a personal business venture, Attorney Goldstein violated SCR 20:1.15(a) (effective through June 30, 2004) and SCR 20:1.15(b)(3).[6]

- COUNT 11: By failing to hold $39,399.46 in fiduciary property belonging to the S.C. Estate in a separate account, Attorney Goldstein violated SCR 20:1.15(j)(1).[7]

---

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[6] SCR 20:1.15(b)(3) (effective as of July 1, 2004) stated, "No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

[7] SCR 20:1.15(j)(1) (effective July 1, 2004, through June 30, 2007) stated:

A lawyer shall hold in trust, separate from the lawyer's own funds or property, those funds or that property of clients or 3rd parties that are in the lawyer's possession when acting in a fiduciary capacity that directly arises in the course of or as a result of a lawyer-client relationship. When a lawyer is in possession of fiduciary property of a probate estate, the lawyer shall maintain

713

- COUNT 12: By making a $2,696 cash withdrawal from the checking account of the S.C. Estate on June 12, 2006, Attorney Goldstein violated SCR 20:1.15(j)(3)a.[8]

¶ 11. The next eight counts involved violations of recordkeeping regulations and Attorney Goldstein's personal use of trust account funds:

- COUNT 13: By failing to file an overdraft notification agreement with OLR regarding the checking account for the S.C. Estate or to have the account independently audited on an annual basis or to require the approving signature of a co-administrator on all disbursements from that account, Attorney Goldstein failed to comply with the requirements of SCR 20:1.15(j)(9).[9]

- COUNT 14: By making 28 telephone transfers to and from his trust account between July 2004 and

---

the property in a separate account subject to the requirements of SCR 20:1.15(j).

[8] SCR 20:1.15(j)(3)a. (effective July 1, 2004, through June 30, 2007) stated, "No disbursement of cash shall be made from a fiduciary account or from a deposit to a fiduciary account, and no check shall be made payable to 'Cash.' "

[9] SCR 20:1.15(j)(9) (effective July 1, 2004, through June 30, 2007) provided as follows:

A lawyer who holds fiduciary property in a demand account shall take one of the following actions:

a. comply with the requirements of SCR 20:1.15(h) Dishonored instrument notification (Overdraft notices); or

b. have the account independently audited by a certified public accountant on at least an annual basis; or

c. hold the funds in a demand account, which requires the approving signature of a co-trustee, co-agent, co-guardian, or co-personal representative before funds may be disbursed from the account."

714

December 2005, totaling $51,640, Attorney Goldstein violated SCR 20:1.15(e)(4)b.[10]

• COUNT 15: By authorizing his personal creditors to make 30 electronic withdrawals, totaling $21,871.19, from his trust account between October 2004 and December 2005, Attorney Goldstein violated SCR 20:1.15(e)(4)d.[11]

• COUNT 16: By failing to maintain a check register or transaction register, client ledgers, and reconciliation reports for his trust account, Attorney Goldstein violated SCR 20:1.15(e)[12] and SCR 20:1.15(e)(6).[13]

• COUNT 17: By maintaining his IOLTA trust account records on a computer and failing to print a copy of the transaction register, the subsidiary ledger, and the reconciliation report every 30 days and retain a printed copy of those records for at least 6 years, as required under sub. (e)(6), Attorney Goldstein violated SCR 20:1.15(f)(4)b.[14]

---

[10] SCR 20:1.15(e)(4)b. (effective July 1, 2004, through June 30, 2007) stated, "No deposits or disbursements shall be made to or from a trust account by a telephone transfer of funds. This section does not prohibit wire transfers."

[11] SCR 20:1.15(e)(4)d. (effective July 1, 2004, through June 30, 2007) provided that, "[a] lawyer shall not authorize a 3rd party to electronically withdraw funds from a trust account."

[12] SCR 20:1.15(e) (effective through June 30, 2004) provided, in pertinent part, that "[c]omplete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. . . ."

[13] SCR 20:1.15(e)(6) (effective July 1, 2004, through June 30, 2007) provided, "A lawyer shall maintain complete records of trust account funds and other trust property and shall preserve those records for at least 6 years after the date of termination of the representation."

[14] SCR 20:1.15(f)(4)b. (effective July 1, 2004, through June 30, 2007) provided as follows: "In addition to the requirements

- COUNT 18: By failing to produce trust account records requested by OLR, Attorney Goldstein violated SCR 20:1.15(e)(7).[15]

- COUNT 19: By failing to identify on trust account deposit slips the client or matter associated with each deposit item, Attorney Goldstein violated SCR 20:1.15(f)(1)d.[16]

- COUNT 20: By failing to identify the account for the S.C. Estate on his fiscal 2006 trust account certification, and by further certifying that he had a trust account overdraft agreement on file with OLR for each demand-type trust account into which he deposits client or third party funds, including funds held in a fiduciary capacity, when he had not filed an overdraft agreement with OLR relating to the S.C. Estate, Attorney Goldstein violated SCR 20:1.15(i)(4).[17]

---

of sub. (f)(4)a., the transaction register, the subsidiary ledger, and the reconciliation report shall be printed every 30 days for the IOLTA account. The printed copy shall be retained for at least 6 years, as required under sub. (e)(6)."

[15] SCR 20:1.15(e)(7) (effective July 1, 2004, through June 30, 2007) provided:

> All trust account records have public aspects related to a lawyer's fitness to practice. Upon request of the office of lawyer regulation, or upon direction of the supreme court, the records shall be submitted to the office of lawyer regulation for its inspection, audit, use, and evidence under any conditions to protect the privilege of clients that the court may provide. The records, or an audit of the records, shall be produced at any disciplinary proceeding involving the lawyer, whenever material. Failure to produce the records constitutes unprofessional conduct and grounds for disciplinary action.

[16] SCR 20:1.15(f)(1)d. (effective as of July 1, 2004) provides that, "[d]eposit slips shall identify the name of the lawyer or law firm, and the name of the account. The deposit slip shall identify the amount of each deposit item, the client or matter associated with each deposit item, and the date of the deposit. . . ."

[17] SCR 20:1.15(i)(4) (effective as of July 1, 2004) states:

¶ 12. Because the facts underlying Counts 1 through 20 were largely undisputed, the disciplinary hearing focused on Attorney Goldstein's dealings with R.R., charged in Counts 21 through 24. The referee recommended dismissal of Counts 21, 22, and 23 for failure of proof. These counts alleged:

- COUNT 21: By failing to pay process service fees that were owed to R.R., when Attorney Goldstein had received funds from clients to pay at least some of those expenses and had deposited those funds into his trust account, Attorney Goldstein violated SCR 20:8.4(c).

- COUNT 22: By failing to promptly disburse to R.R. funds that Attorney Goldstein had received from clients, in which R.R.'s company had an interest identified by a contract, Attorney Goldstein violated SCR 20:1.15(d)(1).[18]

- COUNT 23: By communicating with R.R., a party represented by counsel, through an employee of R.R. and through one of Attorney Goldstein's own employees, after R.R.'s counsel had informed Attorney Goldstein in writing that all communications were to go

---

The failure of a state bar member to file the certificate is grounds for automatic suspension of the member's membership in the state bar in the same manner provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action.

[18] SCR 20:1.15(d)(1) (effective July 1, 2004, through June 30, 2007) provided as follows:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

through counsel, Attorney Goldstein violated SCR 20:4.2[19] through the acts of another, contrary to SCR 20:8.4(a).[20]

¶ 13. Although the referee determined the record failed to support Counts 21 through 23, the referee concluded the record supported Count 24:

- COUNT 24: By representing to OLR that Attorney Goldstein was unable to pay R.R.'s invoices because he had not received payment from a client, when he had received and deposited to his trust account over $29,000 in payments from the client, and when the trust account records subpoenaed by OLR revealed that he was using trust account funds for personal purposes, including real estate ventures, Attorney Goldstein violated SCR 22.03(6),[21] enforceable via SCR 20:8.4(f).[22]

---

[19] SCR 20:4.2 (effective through June 30, 2007) provided, in pertinent part, that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

[20] SCR 20:8.4(a) states it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

[21] SCR 22.03(6) provides:

In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[22] SCR 20:8.4(f) provides it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

718

■

¶ 14.   On appeal, the OLR first challenges the dismissal of Count 23. According to the disciplinary complaint, R.R.'s attorney directed Attorney Goldstein to deal with the attorney rather than R.R. The complaint alleges that on September 6, 2005, Attorney Goldstein spoke with one of R.R.'s employees, telling him to inform R.R. Attorney Goldstein soon expected to have the money to pay the bill in full.

¶ 15.   The OLR relies on the pleadings, claiming that Attorney Goldstein's answer did not dispute certain paragraphs in the complaint containing allegations in support of Count 23.[23] The OLR also relies on the testimony of Mary Hoeft Smith, the administrator of the OLR's trust account program, who stated that Attorney Goldstein violated SCR 20:4.2 (Count 23) because another lawyer may not communicate directly with someone represented by counsel, absent that counsel's permission. Over Attorney Goldstein's objection, the referee permitted this testimony as foundation. A lengthy discussion ensued between the referee and counsel regarding the admissibility of Ms. Hoeft Smith's testimony.

¶ 16.   In his report recommending dismissal of Count 23, the referee found, "The only testimony elicited at the hearing was from Attorney Goldstein who indicated that he told an employee to thank [R.R.] for continuing to work with Goldstein." The referee explained:

---

[23] Attorney Goldstein's answer stated, "In answer to Count 23 of the Complaint in the matter (¶ 105), Goldstein denies the allegations therein; . . . ." Attorney Goldstein also denied Counts 18, 21, 22, and 24. He pled no contest to the remaining counts. He sought to dispute the level of discipline, reserving the right to show inaccuracies, and referenced the fact allegations pertaining to Counts 1 through 20 to mitigate the sanction.

[Counsel for OLR] stated that OLR maintains that Goldstein talked to an employee of [R.R.]'s and therefore this was a communication to [R.R.]. Goldstein was allowed to explain this situation and he testified that he was still doing business with [R.R.] while he was being sued by [R.R.]. One of [R.R.]'s process servers came to pick up some pleadings to be served and he said to this employee, "tell [R.R.] I said thanks for still doing business with me."

¶ 17.   The referee noted that R.R. had continued to do business with Attorney Goldstein, despite not being paid. The referee concluded the "communication to [R.R.]'s employee under [their] working arrangement does not rise to a communication with a party who was represented by an attorney. There was no discussion about the pending case in which the attorney was representing [R.R.]." Based on these findings, the referee concluded that Count 23 was not proved.

¶ 18.   A referee's findings of fact will not be overturned unless clearly erroneous. *See In re Disciplinary Proceedings Against Carroll*, 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. We independently review the referee's legal conclusions. *Id.*

¶ 19.   We are satisfied the hearing transcript supports the referee's finding that Count 23 was not proved. Ms. Hoeft Smith testified regarding her conclusions as to Count 23, but no direct testimony of Attorney Goldstein's conversation with R.R.'s employee was presented. The OLR's arguments imply the referee was bound by the pleadings. We are not persuaded, absent a motion from the OLR, the referee was required to accept the pleadings as proof of Count 23. The record does not clearly demonstrate the OLR requested the referee to accept the pleadings, briefs, or exhibits to

prove Count 23. Because an evidentiary hearing was held with respect to disputed counts, which included Count 23, it was reasonable for the referee to rely on the testimony presented at the hearing and find Ms. Hoeft Smith's testimony to be insufficient proof.

¶ 20. We approve and adopt the referee's findings and conclusions with respect to Attorney Goldstein's misconduct. The record supports the violations charged in Counts 1 through 20 and Count 24. We accept the referee's recommendation that Counts 21, 22, and 23 be dismissed.

■

¶ 21. Next, we address the OLR's challenge to the referee's recommended one-year license suspension. Both the OLR and Attorney Goldstein agree that Count 23 has little bearing on the level of discipline. The OLR argues that Attorney Goldstein's misconduct, which reveals a dishonest scheme to convert the funds belonging to three probate estates, put his clients at a risk of harm. The OLR argues, "As admitted by [Attorney] Goldstein, if he had not sold the Arizona property, he may still owe the converted funds to the estates." The OLR contends actual harm is not necessary for revocation, and the fact Attorney Goldstein repaid the funds does not excuse his misconduct. The OLR claims that given the aggravated nature of his misconduct, Attorney Goldstein's license should be revoked.

¶ 22. The OLR contends Attorney Goldstein's misconduct is aggravated because it reveals: (1) dishonest and selfish motives of paying personal and business expenses and financing real estate investments; (2) patterns of theft from 2003 through 2005; (3) multiple offenses; (4) deceptive practices when Attorney Goldstein represented to the OLR he was unable to pay process serving fees because one of his clients was not

paying him when, in fact, the client in question had paid him over $29,000; and (5) refusal to acknowledge the wrongful nature of his misconduct by failing to pay over $3,000 in interest to the C.V. and H.G. Estates, failing to recognize the seriousness of his misconduct, not believing his conduct caused harm, and expressing little remorse.

¶ 23. The OLR relies on a number of disciplinary cases that ordered revocation. *See In re Disciplinary Proceedings Against O'Byrne*, 2002 WI 123, ¶ 20, 257 Wis. 2d 8, 653 N.W.2d 111 (conversion of approximately $34,000); *In re Disciplinary Proceedings Against Lieuallen*, 2001 WI 50, ¶¶ 7–10, 243 Wis. 2d 478, 626 N.W.2d 802 (conversion of $60,843.29 and other misconduct); *In re Disciplinary Proceedings Against Martinez*, 225 Wis. 2d 433, 434–36, 591 N.W.2d 866 (1999) (conversion of approximately $158,000 held in trust and other misconduct); *In re Disciplinary Proceedings Against Rudolph*, 187 Wis. 2d 324, 326–27, 522 N.W.2d 219 (1994) (misappropriation of more than $11,000); *In re Disciplinary Proceedings Against Wright*, 180 Wis. 2d 492, 493, 509 N.W.2d 290 (1994) (conversion of nearly $11,000 from an estate).

¶ 24. Attorney Goldstein responds that the referee's recommendation of a one-year suspension should be given weight. *See In re Disciplinary Proceedings Against Krezminski*, 2007 WI 21, ¶ 16, 299 Wis. 2d 152, 727 N.W.2d 492 ("Although this court takes into account the referee's recommendation as to appropriate discipline, we do not accord the referee's recommendation any conclusive or great weight."). The referee noted Attorney Goldstein had practiced law for 31 years without previous discipline. The referee discussed at length the testimony of Attorney Goldstein's witnesses attesting to his good reputation. The referee empha-

sized that Attorney Goldstein recognized his use of the money entrusted to him was improper and, on his own initiative, repaid the funds before the OLR investigation was initiated. Also, the referee said, Attorney Goldstein acknowledged his obligation to pay his clients interest.

¶ 25. Attorney Goldstein contends his repayment of the funds and the mitigating factors noted by the referee justify license suspension, rather than a revocation. He points out the referee found that no client lost any principal. He notes that several cases support a license suspension. For example, he relies on *Krezminski*, 299 Wis. 2d 152 (a two-year suspension for misconduct including conversion); *In re Disciplinary Proceedings Against Schuster*, 2006 WI 21, 289 Wis. 2d 23, 710 N.W.2d 458 (nine-month suspension, via stipulation, for trust account violations, falsified records, and personal use of trust account funds); and *In Re Disciplinary Proceedings Against Nelson*, 225 Wis. 2d 240, 592 N.W.2d 194 (1999) (a two-year suspension for converting client funds, repaid before any client incurred any loss).

¶ 26. Attorney Goldstein also relies on *In re Disciplinary Proceedings Against Bult*, 142 Wis. 2d 885, 419 N.W.2d 245 (1988). Attorney Bult was suspended after misappropriating and commingling client funds and having withdrawn over $74,000 from his trust account for personal use. Attorney Bult repaid the money when the circuit court ordered him to account for an insurance settlement and pay the proceeds to the court. In suspending Attorney Bult's license for two years, the court stated, "[L]icense revocation ought not be imposed indiscriminately in every case of misappropriation or conver-

sion of client funds" because no two cases present precisely the same circumstances and other factors may be considered. *Id.* at 890–91.

¶ 27. The gravity of Attorney Goldstein's misconduct presents the question whether the revocation of his license to practice law in Wisconsin is necessary to achieve the objectives of attorney discipline. It is our independent responsibility to determine appropriate discipline. *See In re Disciplinary Proceedings Against Reitz*, 2005 WI 39, ¶ 74, 279 Wis. 2d 550, 694 N.W.2d 894. We are not bound by the referee's recommendation as to discipline. *Id.* We must consider the seriousness of the misconduct, as well as the need to protect the public, courts, and legal system from repetition of misconduct and to deter attorneys from engaging in similar misconduct. *See In re Disciplinary Proceedings Against Arthur*, 2005 WI 40, ¶ 78, 279 Wis. 2d 583, 694 N.W.2d 910.

¶ 28. We agree with the OLR that Attorney Goldstein's professional misconduct warrants significant discipline, not only as an appropriate response to the gravity of the violations, but also as a deterrent to other attorneys. *See In re Disciplinary Proceedings Against Horth*, 148 Wis. 2d 562, 563–64, 435 N.W.2d 732 (1989). The misappropriation of client funds is a grave breach of trust. "The foundation of an attorney's relationship with clients and the legal system is trust." *Id.* An attorney who violates that trust by misappropriating funds demonstrates a lack of fitness to be entrusted with the responsibilities of the profession. *See id.* This court does not hesitate to impose revocation when needed and many cases involving conversion of funds have warranted revocation.

¶ 29.  Each case must turn on its individual facts. Balancing the circumstances presented, we conclude the recommended one-year license suspension minimizes the seriousness of Attorney Goldstein's misconduct. The gravity of Attorney Goldstein's violations, the repetitive nature of his misconduct, and his pattern of deception are aggravating factors. His misconduct is no less serious in the light of accolades of his colleagues. Despite the gravity of his misconduct, however, we conclude revocation is not warranted here. Weighing heavily in Attorney Goldstein's favor is his lack of prior discipline. Also, Attorney Goldstein's acknowledgement of his wrongdoing by entering no contest pleas to the majority of the counts is a significant mitigating factor. While repayment of the funds does not eliminate his culpability, it shows concern for his clients' well-being, also mitigating his misconduct. In consideration of these competing factors, we conclude a two-year license suspension will protect the public and achieve the goal of deterrence.

¶ 30.  We adopt the referee's recommendation as to costs. Under SCR 22.24(1m), the court's general policy is to impose costs on the respondent, Attorney Goldstein. To award less than full costs, the court must find "extraordinary circumstances." *Id.* Attorney Goldstein has not objected to costs and has not claimed extraordinary circumstances to justify the imposition of less than full costs. Accordingly, Attorney Goldstein shall bear the entire costs of the proceedings.[24] We approve and adopt the referee's recommendation based upon the parties' stipulation that Attorney Goldstein pay interest of $1,900 to the C.V. Estate and $1,166 to the H.G. Estate.

---

[24] The OLR filed a statement of costs totaling $6,583.38 on December 22, 2009.

¶ 31. IT IS ORDERED that the license of Harvey J. Goldstein to practice law in Wisconsin is suspended for a period of two years, effective May 24, 2010.

¶ 32. IT IS FURTHER ORDERED that Harvey J. Goldstein pay restitution in the total sum of $3,066. If the restitution is not paid within 60 days of this order, Harvey J. Goldstein's license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 33. IT IS FURTHER ORDERED that within 90 days of the date of this order Harvey J. Goldstein pay to the Office of Lawyer Regulation the costs of this proceeding. If costs are not paid within the time specified and absent a showing of his inability to pay, Harvey J. Goldstein's license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 34. IT IS FURTHER ORDERED that the restitution is to be paid in full prior to paying costs to the Office of Lawyer Regulation.

¶ 35. IT IS FURTHER ORDERED that Harvey J. Goldstein shall comply with SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.