# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1259-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Michael R. Bauer, Attorney at Law: |
| | Office of Lawyer Regulation,       Complainant-Respondent,     v. Michael R. Bauer,       Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST BAUER

| | |
|---|---|
| OPINION FILED: | May 16, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there was a brief filed by *Michael J. Short* and *Short Law Office*, Madison.

For the complainant-respondent, there was a brief filed by *Paul W. Schwarzenbart* and *Office of Lawyer Regulation*, Madison.

**2018 WI 49**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1259-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Michael R. Bauer, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent,**

  **v.**

**Michael R. Bauer,**

      **Respondent-Appellant.**

**FILED**

**MAY 16, 2018**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended*.

¶1 PER CURIAM. We review the report and recommendation of Referee John B. Murphy that Attorney Michael R. Bauer's license to practice law in Wisconsin be suspended for a period of one year for professional misconduct and that he pay the full costs of this proceeding, which are $15,727.40 as of April 25, 2018.

¶2 Upon careful review of the matter, we adopt the referee's findings of fact and conclusions of law. We agree

that a one-year suspension of Attorney Bauer's license is an appropriate sanction for his misconduct. We also agree that the full costs of this proceeding should be assessed against him.

¶3 Attorney Bauer was admitted to practice law in Wisconsin in 1988. He has not previously been disciplined. At the time pertinent to this case he was a member of Bauer & Bach, LLC in Madison. He now practices as Bauer Law Office in Madison.

¶4 Bauer & Bach maintained both a trust account and a business account at Capitol Bank. Attorney Bauer was the attorney primarily responsible for the record keeping for both the trust and business accounts. T.P., a paralegal assistant at the firm, assisted the attorneys by preparing business and trust account checks and by making entries in the QuickBooks bookkeeping program used by the firm for the purpose of, among other things, serving as the transaction register for the accounts. At no time during the pertinent time frame at issue here did the trust account ever have a negative balance. Attorney Bauer also maintained accounts for Sports Advisors, Inc., a business he owned, at Capitol Bank and at US Bank.

¶5 On June 24, 2016, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Bauer alleging 28 counts of misconduct. The complaint alleged that between December 2013 and October 2014, Attorney Bauer misused seven clients' trust funds and mismanaged his trust account. On numerous occasions he transferred client funds from one account to another without permission of the clients, failed to make

notations of the transfers, transferred trust account funds to fill gaps created in other client accounts to avoid detection, transferred trust funds to his office account and to the account of his subsidiary business, Sports Advisors, Inc., and borrowed money to reestablish correct account balances. It is undisputed that all of the clients received all monies due them. It is also undisputed that none of the clients consented to the use of their money to fund disbursements that benefitted others.

¶6 Attorney Bauer filed an answer on August 16, 2016, admitting some allegations in the complaint and denying others. The referee was appointed on October 8, 2016. On May 15, 2017, the parties entered into a stipulation whereby Attorney Bauer did not contest 13 of the counts; the OLR agreed to dismiss four counts; the parties agreed that four other counts could be amended to conform to the evidence; and Attorney Bauer contested seven counts that alleged he had converted client funds.

¶7 A brief evidentiary hearing was held on May 22, 2017. At the hearing, Attorney Bauer admitted mishandling the trust account but described what happened as being sloppy and the result of neglect. He blamed some of the problems on the fact that "starting probably late 2014 up through mid-2015"[1] he spent a lot of time in Washington, D.C. He said:

> I neglected it. I mean, in the end, I mean, I thought
> that -- it was one of those deals that I thought it
> was all going to be over the next day. So I thought,

---

[1] The mishandling of the trust account occurred between December 2013 and October 2014.

3

well, I'm going to get this over and get back and get things straight. The next day went into the next day, and I was still not around.

So all of a sudden the focus came on making sure that -- I guess more making sure -- I didn't have access to QuickBooks when I was out there, but I did have access on-line to the bank account. So then I was suddenly more focused on just making sure that there was always money in the appropriate accounts to cover any checks that were being cut.

¶8 Attorney Bauer said that things came to a head when the firm's paralegal looked at the bank statements and saw the problems with the trust account. She then notified Attorney Bach, who confronted Attorney Bauer. Attorney Bauer said he apologized to Attorney Bach and admitted, "I should have asked for some help whether from him or the accountant when I knew I wasn't taking care of it properly."

¶9 The parties subsequently filed briefs discussing the seven contested counts. On August 8, 2017, the referee issued a report accepting the stipulation and finding that the OLR had met its burden of proof with respect to five of the seven contested counts. The referee found that Attorney Bauer had converted $376,818.63. The referee found that the OLR had not met its burden of proof on the other two contested counts. The referee said:

> During the period between December 2, 2013 and October 16, 2014, Bauer carried out the unauthorized use of client trust funds for his own purposes. He did so knowingly and with clear disregard for the rules of trust account maintenance. The funds improperly handled were used to fill gaps in other clients' account balances or to infuse money into the firm business account and the account of Sports Advisors, Inc.

4

Bauer appears to see his offenses regarding the Trust Account as being related to sloppy business practices and nothing more. The facts contained in the counts for which Bauer has now been found guilty suggest something well beyond sloppy work. They strongly support the belief that Bauer saw his Trust Accounts as something akin to a slush fund. He removed funds without permission and clearly seemed to constantly be in the process of "robbing Peter to pay Paul" and, in some cases, to pay Michael Bauer. Such behavior is unacceptable at any level and especially onerous when carried out by a person licensed to practice law.

¶10 The referee found that the OLR met its burden of proof on 17 trust account violations and five violations of SCR 20:8.4(c). Attorney Bauer stipulated, and the referee agreed, that he violated the following trust account rules: SCR 20:1.15(b)(1);[2] former SCR 20:1.15(b)(3);[3] former SCR 20:1.15(f)(1)a.;[4] and former SCR 20:1.15(e)(4)c.[5] Most rules

---

[2] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[3] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(b)(3) provided: "No funds belonging to a lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

[4] Former SCR 20:1.15(f)(1)a. provided:

(continued)

5

were violated multiple times.  The five counts that Attorney Bauer had contested and the referee ultimately found had been proven by the OLR all involved violations of SCR 20:8.4(c).[6] Attorney Bauer had argued that the five SCR 20:8.4(c) counts were subsumed into the trust account counts and that the

---

Complete records of a trust account that is a draft account shall include a transaction register; individual client ledgers for IOLTA accounts and other pooled trust accounts; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:

a. The transaction register shall contain a chronological record of all account transactions, and shall include all of the following:

1. the date, source, and amount of all deposits;

2. the date, check or transaction number, payee and amount of all disbursements, whether by check, wire transfer, or other means;

3. the date and amount of every other deposit or deduction of whatever nature;

4. the identity of the client for whom funds were deposited or disbursed; and

5. the balance in the account after each transaction.

[5] Former SCR 20:1.15(e)(4)c. provided: "A lawyer shall not make deposits to or disbursements from a trust account by way of an Internet transaction."

[6] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

evidence was insufficient to support the allegations. The referee found otherwise.

¶11 On October 13, 2017, the referee issued a recommendation as to discipline. While the OLR sought a two-year suspension and Attorney Bauer suggested a 60-day suspension would be an appropriate sanction, the referee ultimately concluded that a one-year suspension was in order.

¶12 The referee said while, in the end, Attorney Bauer made good on all of the accounts and no client lost any money, this did nothing to excuse Attorney Bauer's behavior since "Bauer had no right to use his client's funds without permission and the fact that he avoided getting caught for his behavior by 'robbing Peter to pay Paul' in no way lessens the seriousness of these offenses."

¶13 The referee noted that Attorney Bauer was an experienced attorney, having practiced law since 1988, so he could not claim he was not familiar with the supreme court rules regarding the management of trust accounts. The referee said Attorney Bauer himself asserted that he appropriately managed his trust accounts before and after 2014 so he could not suggest he did not understand how to handle trust account issues appropriately. The referee commented that "[t]here was little or no explanation from Bauer as to WHY the 'wheels came off' his trust account management practices in 2014."

¶14 The referee said once confronted, Attorney Bauer admitted guilt as to many of the allegations; he fully cooperated with the OLR investigation; and he expressed remorse

7

for his misbehavior. However, the referee went on to say, "That said, he did continue to suggest that his behavior was more in the nature of technical bookkeeping errors as opposed to intentional acts. The facts . . . suggest otherwise."

¶15 The referee termed Attorney Bauer's violations "extensive and long-lasting." The referee said Attorney Bauer:

> Had numerous opportunities to stop his inappropriate manipulation of the trust accounts and yet he failed to do so. He not only shifted funds around between clients but he moved funds completely out of the trust account and "made whole" his business account and Sports Advisor, Inc., accounts while borrowing money to fill the trust account gaps which he had created. Finally, he failed to seek help from those around him who could have, if asked, given him the guidance and expertise needed to put an end to what had become a downward spiral of misbehavior.

¶16 The referee said the 60-day suspension suggested by Attorney Bauer was clearly inadequate, but on the other hand the two-year suspension sought by the OLR was excessive under the theory of progressive discipline given that Attorney Bauer had no previous disciplinary history. Accordingly, the referee recommended a one-year license suspension and also recommended that Attorney Bauer be ordered to pay the full costs of the proceeding.

¶17 Attorney Bauer appealed the referee's recommendation for a one-year suspension but after all briefs were filed he voluntarily dismissed his appeal.

¶18 A referee's findings of fact are affirmed unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI

8

14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. This court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 43, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶19 There is no showing that any of the referee's findings of fact are clearly erroneous. Accordingly, we adopt them. We also agree with the referee's conclusions of law that Attorney Bauer violated the supreme court rules set forth above.

¶20 With respect to the appropriate level of discipline, upon careful review of this matter, we agree with the referee's recommendation for a one-year suspension of Attorney Bauer's license to practice law in Wisconsin. Although no two disciplinary proceedings are identical, we find support for the referee's recommended sanction in our decision in In re Disciplinary Proceedings Against Goldstein, 2010 WI 26, 323 Wis. 2d 706, 782 N.W.2d 388.

¶21 Attorney Goldstein converted nearly $70,000 from three estates where he had served as a special administrator or personal representative. Like Attorney Bauer, Attorney Goldstein's clients sustained no actual loss. Like Attorney Bauer, Attorney Goldstein had no prior discipline over what had been an otherwise distinguished 33-year legal career.

¶22 Attorney Goldstein was found to have committed 21 counts of misconduct, including six counts of violating SCR 20:8.4(c). Attorney Goldstein's situation involved some aggravating circumstances that are not present here. Attorney Goldstein paid both personal and business expense and financed

his personal real estate investments out of the converted funds. Attorney Goldstein's actions actually deprived his clients of money until he repaid the funds. Attorney Goldstein's conversions took place over a long period of time. Attorney Goldstein lied in his statements to the OLR, and he refused to acknowledge the wrongful nature of his misconduct. Due to these aggravating factors, which are not present here, Attorney Goldstein received a two-year license suspension.

¶23 Although the amounts of the conversions at issue in this case far exceed those in Goldstein, Attorney Bauer cooperated with the OLR, and he entered into a partial stipulation. Unlike the situation in Goldstein, none of Attorney Bauer's clients lost any money. Thus, a two-year suspension is not warranted. However, Attorney Bauer's misconduct is nonetheless very serious and does warrant a significant sanction.

¶24 The referee found that Attorney Bauer committed five violations of SCR 20:8.4(c). As the referee noted, Attorney Bauer made numerous improper transfers of multiple clients' funds between his firm's trust account, the firm's business account, and accounts belonging to Attorney Bauer's side business, Sports Advisors, Inc. These labyrinthine transfers support the referee's comments that Attorney Bauer saw his trust account "as something akin to a slush fund" and that the transfers "seemed to constantly be in the process of 'robbing Peter to pay Paul' and, in some cases, to pay Michael Bauer." The transfers continued for nearly one year. Attorney Bauer was

10

an experienced attorney who should have known that the transfers were improper.  We agree with the referee that Attorney Bauer's repeated acts of dishonesty, fraud, deceit and misrepresentation in converting $376,000 in client funds, along with his failure to comply with multiple supreme court rules regarding trust account management, warrant a one-year suspension.  As is our usual custom, we also find it appropriate to assess the full costs of the proceeding against Attorney Bauer.

¶25  IT IS ORDERED that the license of Michael R. Bauer to practice law in Wisconsin is suspended for a period of one year, effective June 27, 2018.

¶26  IT IS FURTHER ORDERED that within 60 days of the date of this order, Michael R. Bauer shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $15,727.40 as of April 25, 2018.

¶27  IT IS FURTHER ORDERED that Michael R. Bauer shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶28  IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement.  See SCR 22.29(4)(c).

11