# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1288-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Daniel W. Morse, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent, v. Daniel W. Morse, Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST MORSE

| | |
|---|---|
| OPINION FILED: | May 21, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1288-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Daniel W. Morse, Attorney at Law:**

**Office of Lawyer Regulation,**                    **FILED**

      **Complainant-Respondent,**                May 21, 2019

  **v.**                                                      Sheila T. Reiff
                                                        Clerk of Supreme Court
**Daniel W. Morse,**

      **Respondent-Appellant.**

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. Attorney Daniel W. Morse has appealed a report filed by Referee James W. Mohr, Jr., concluding that Attorney Morse committed four counts of professional misconduct and recommending that his license to practice law in Wisconsin be suspended for two years. In his appeal, Attorney Morse challenges only the referee's recommended sanction. Attorney Morse argues that his misconduct warrants a public reprimand or, at most, a 60-day suspension.

¶2 Upon careful review of this matter, we uphold the referee's findings of fact and conclusions of law. We conclude, however, that rather than the two-year suspension recommended by the referee, a one-year suspension of Attorney Morse's license to practice law is an appropriate sanction for the misconduct at issue. In addition, we find it appropriate to follow our usual custom of imposing the full costs of this proceeding, which are $11,038.85 as of December 18, 2018, on Attorney Morse. The Office of Lawyer Regulation (OLR) notes that Attorney Morse has already made restitution and it is not seeking an additional restitution award.

¶3 Attorney Morse was admitted to practice law in Wisconsin in 1979. He is also licensed to practice law in Florida and Pennsylvania. He has no prior disciplinary history.

¶4 On June 29, 2016, the OLR filed a complaint alleging six counts of misconduct with respect to Attorney Morse's handling of the estate of M.G. Attorney Morse filed an answer on July 28, 2016. Referee Mohr was appointed on October 8, 2016, following Attorney Morse's motion for substitution of a previously appointed referee. In May of 2017, the referee ordered the disciplinary proceeding stayed pending a criminal case filed against Attorney Morse arising out of the same fact situation that gave rise to this case. The stay was lifted in May of 2018.

¶5 On June 21, 2018, the parties filed a stipulation whereby Attorney Morse stipulated to four of the counts of misconduct alleged in the OLR's complaint. The OLR dismissed

2

the remaining two counts. The parties agreed that the terms of the stipulation shall serve as the factual basis for the referee's determination of misconduct and, in addition to any evidence received in the disciplinary phase of the matter, the referee's recommendation as to discipline. The parties agreed that the scope of the hearing in this matter would be limited to taking additional evidence and argument to facilitate the referee's recommendation as to the appropriate sanction.

¶6 The hearing with respect to the sanction was held on July 2, 2018. The referee issued his report and recommendation on September 7, 2018. The referee adopted the facts as stated in the stipulation. The following recitation of facts is taken from the stipulation.

¶7 M.G. passed away on October 11, 2013. Approximately four days later, Attorney Morse met with the heirs of the estate. Since three of the four heirs resided outside of Wisconsin, and the fourth heir had physical limitations that prevented her from acting, it was agreed that Attorney Morse would be nominated as personal representative of the estate. Attorney Morse also served as attorney for the personal representative. No fee agreement was entered into between Attorney Morse and the estate's heirs, although it was reasonably feasible that the total cost of the representation would exceed $1,000.

¶8 The estate was filed in Dodge County Circuit Court in November 2013. No bills for Attorney Morse's services were sent to the heirs during his representation of the estate.

3

¶9 The heirs eventually expressed to Attorney Morse their frustration at his lack of communication and his seeming neglect of the estate. On August 31, 2014, the heirs wrote to Attorney Morse expressing a general concern for his lack of communication and attention to the estate. The heirs' letter contained several specific requests for information about the estate, including but not limited to requests for an itemized bill for Attorney Morse's legal services, an accounting for all expenditures made on behalf of the estate, and the timing of payment of certain bills of the estate. The heirs requested a response to their letter within ten days. In a September 8, 2014 email to the heirs, Attorney Morse stated he would respond to the August 31 letter that week, but he failed to do so.

¶10 In October 2014, the heirs met with Attorney Allen Larson and requested that he replace Attorney Morse as personal representative for the estate. From October 2014 through January 2015, Attorney Larson tried to communicate with Attorney Morse about the estate. Attorney Larson told Attorney Morse that the heirs wanted Attorney Larson to replace Attorney Morse as personal representative. Attorney Larson requested from Attorney Morse, among other things, an accounting of the estate and copies of the estate's banking records. Attorney Morse was largely nonresponsive to Attorney Larson's communications and requests for information.

¶11 On November 18, 2014, the probate court entered an order granting the stipulated substitution of Attorney Larson in

4

place of Attorney Morse as personal representative of the estate.

¶12 On December 19, 2014, Attorney Larson received a package from Attorney Morse containing a $3,000 check made out to the estate drawn on Attorney Morse's law firm trust account along with unopened mail relating to the estate, including bills, some of which had arrived since Attorney Larson's substitution in place of Attorney Morse. No accounting for the estate was enclosed, nor was there any explanation of the purpose for the check or why it was drawn on Attorney Morse's law firm trust account.

¶13 Attorney Larson filed an inventory for the estate on January 23, 2015. The due date for filing the inventory had passed during the period in which Attorney Morse represented the estate, but Attorney Morse never filed an inventory.

¶14 As a result of his inability to obtain information about the estate from Attorney Morse, including an accounting and banking records, Attorney Larson filed an order to show cause on February 25, 2015 directed to Attorney Morse, along with an accompanying affidavit demonstrating over $26,000 in estate funds were unaccounted for by Attorney Morse.

¶15 At a March 30, 2015 hearing on the order to show cause, Attorney Morse was ordered to make a payment to the estate in the amount of $26,037.19 by April 9, 2015. This sum represented the amount of funds belonging to the estate for which Attorney Morse could not account. Attorney Morse was also

5

ordered to provide to Attorney Larson all financial records and an accounting pertaining to the estate.

¶16 Attorney Morse timely made the payment ordered by the probate court, but he never produced the financial records relating to the estate.

¶17 At the March 30, 2015 hearing, Attorney Morse presented for the first time a billing statement for fees he claimed he incurred in representing the estate. The statement purported to show that the estate owed Attorney Morse over $7,500 for legal services rendered in connection with the estate. In May of 2015, Attorney Larson asked Attorney Morse for substantiation of the various entries on the billing statement. Attorney Morse did not reply, and the heirs never made any payment to Attorney Morse.

¶18 Attorney Larson eventually obtained the banking records relating to the estate without Attorney Morse's assistance. The records reflected that Attorney Morse wrote checks and made electronic fund transfers totaling over $25,000 to himself or his law office. Attorney Morse presented no evidence to the probate court or to OLR that the more than $25,000 in payments were related in any way to the estate. Bank records reflected additional payments made from estate funds for Attorney Morse's personal benefit, including payment of rent for his office space and payment of his cable bill.

¶19 By virtue of the stipulation, Attorney Morse admitted the following counts of misconduct:

6

**Count 1:** By failing to take steps to advance the interests of the estate, including but not limited to: failing to file an inventory, failing to open mail related to the estate, and failing to pay bills owed by the estate, Attorney Morse violated SCR 20:1.3.[1]

**Count 2:** By failing to promptly deliver to Attorney Larson all documents in his possession relating to the estate, including but not limited to, financial records pertaining to the estate, Attorney Morse violated SCR 20:1.16(d).[2]

**Count 3:** By failing to abide by the probate court's March 30, 2015 order, that he turn over to Attorney Larson all financial records pertaining to the estate, Attorney Morse violated SCR 20:3.4(c).[3]

**Count 4:** By failing to keep in trust funds totaling over $25,000 belonging to the estate, and by instead paying those funds to his law firm and himself and using the funds to pay personal obligations, Attorney Morse violated SCR 20:8.4(c)[4] and SCR 20:1.15(b)(1).[5]

---

[1] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client.

[2] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[3] SCR 20:3.4(c) provides: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[4] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

¶20 The OLR dismissed the remaining two counts of misconduct alleged in the complaint, saying the OLR director no longer believed that the OLR could prove either of those violations by clear, satisfactory, and convincing evidence.

¶21 In his report, the referee discussed the various witnesses who testified at the July 2, 2018 hearing. One of M.G.'s brothers and heirs testified by telephone and expressed his frustration over Attorney Morse's failure to handle key aspects of the estate and his failure to respond to the heirs' reasonable inquiries.

¶22 Attorney Larson testified at the hearing. The referee said Attorney Larson "seemed genuinely offended" by Attorney Morse's conduct, calling the conduct "inexcusable" and damaging to the public's perception of the legal profession.

¶23 Attorney Morse testified at the hearing that he has been an attorney for 39 years and practices primarily in the areas of tax, estate planning, and estate administration. Although in the past he worked with a number of large firms in the Milwaukee area, he has been a solo practitioner since 2011.

---

[5] SCR 20:1.15(b)(1) provides:

> A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

8

The referee said that Attorney Morse testified in a sincere and forthright manner and sounded quite embarrassed and genuinely remorseful about what he had done. The referee said to Attorney Morse's credit, he did not deny the facts of the case or the ethical and moral lapses those facts represented. He admitted he had done something wrong and said the entire matter had cost him over $80,000 and was an embarrassment to him and his family. He emphasized he would never again act as a personal representative.

¶24 The referee noted that Attorney Morse offered several mitigating explanations for his misconduct. He said he had to travel to Florida on numerous occasions to help his elderly mother. He said he was suffering from several medical conditions that caused extreme pain in his lower back. He admitted perhaps overusing drugs and alcohol to help deal with the pain, and he said the pain caused him to lose sleep and caused an inability to concentrate at work. Attorney Morse testified he had back surgery in May of 2017 and the pain went away almost entirely.

¶25 Attorney Morse also said his automobile was stolen in June of 2014 and included in the items of personal property in the car at the time were files, including much of the file for the M.G. estate. Attorney Morse testified that he had signed a personal signature bond as personal representative of the M.G. estate in the amount of $50,000. The referee said Attorney Morse readily admitted to comingling estate funds with his personal and business accounts and justified that behavior by

9

saying that, in light of the signature bond, he was ultimately responsible for the full value of the estate and that it did not matter if he used estate funds so long as he was ultimately "good for it."

¶26 Attorney Morse was charged with five felonies and three misdemeanors over his handling of the M.G. estate funds. The referee noted that the criminal case was resolved by a plea agreement under the terms of which the felony counts were dismissed and Attorney Morse pled guilty to three counts of theft (embezzlement), Class A misdemeanors, on January 7, 2018. As part of the plea agreement, Attorney Morse agreed that he would not oppose the district attorney's recommendation that, as a condition of probation, Attorney Morse be prohibited from practicing law for a period of two years. Attorney Morse also agreed to repay to the heirs and the estate an additional $10,710.17 in interest and attorney's fees. He has repaid that amount.

¶27 Attorney Morse was sentenced on the criminal charges on April 24, 2018. The sentencing court stated there was an extremely low likelihood that Attorney Morse would do anything wrong in the future and the need to protect the public was also extremely low. The sentencing court also did not believe Attorney Morse was in need of rehabilitation and that he would be sufficiently deterred from engaging in similar future conduct. The circuit court imposed and stayed a sentence of six months in the House of Correction and placed Attorney Morse on probation for one year, without any conditions except for 40

10

hours of community service.  No additional restitution was ordered, nor was there any requirement that Attorney Morse refrain from practicing law for any period of time.

¶28 The referee noted that this case presented certain aggravating and mitigating circumstances.  The referee said the aggravating circumstances present were a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law.  The referee identified as mitigating factors the absence of any prior disciplinary record, personal or emotional problems, a timely good faith effort to make restitution, cooperation with the OLR, character or reputation, and remorse.  The referee said although Attorney Morse testified about medical and treatment issues related to back pain, the referee did not take those issues into account when deciding the appropriate sanction because there was no testimony or evidence sufficient to find a causal connection between any medical condition and the misconduct.

¶29 The referee said in arriving at a recommendation for discipline, it was worth noting that Attorney Morse had previously agreed to a plea agreement in the criminal case which included his agreement not to practice law for a period of two years, although the sentencing court did not impose that condition as part of the sentence.  The referee said this case involves serious misconduct and although the referee believed it was unlikely that Attorney Morse's misconduct would recur, "nevertheless damage has been done to the public, the courts, the clients, and to the legal system and should not go

11

unpunished." The referee said attorneys with Attorney Morse's level of experience should certainly understand that they are not supposed to comingle client trust funds with their own funds; that when called to account they must understand they cannot be allowed to wait until a court orders reimbursement; and that they must serve the public competently and promptly so that public trust in attorneys is maintained.

¶30 The referee discussed a number of prior disciplinary cases that involved misuse or conversion of client funds and concluded that the fact situation here was similar to that presented in In re Disciplinary Proceedings Against Krezminski, 2007 WI 21, 299 Wis. 2d 152, 727 N.W.2d 492. Attorney Krezminski was the personal representative of an estate and took possession of $37,000 in funds from the estate. He began using some of the funds himself and was only able to forward approximately $16,000 of estate funds when the sole heir of the estate demanded payment. Attorney Krezminski ultimately paid the balance of the funds, plus interest, to the heir. Attorney Krezminski also failed to keep a different client informed of the status of his case. Attorney Krezminski had previously been privately reprimanded. This court suspended his license to practice law for two years. The referee concluded that Attorney Morse's conduct warranted a similar sanction. The referee again noted that, as part of his plea agreement, Attorney Morse had been willing to accept, as a condition of his sentence in the criminal case, a two-year suspension of his law license.

12

¶31 In his appeal, Attorney Morse argues that a two-year suspension is excessive and a public reprimand would be appropriate. In the alternative, he says that if a suspension is to be imposed, the suspension should not exceed 60 days.

¶32 Attorney Morse argues that the relevant mitigating factors weigh in favor of a much lesser sanction than that recommended by the referee. He points out he has no prior discipline, either in Wisconsin or in the other jurisdictions where he is admitted to practice law. He asserts that there was no dishonest or selfish motive and although he did mishandle the estate funds, "at the time he regarded it as a harmless convenience." Attorney Morse says at the time he was handling the M.G. estate he was under significant stress, was new to solo practice, was trying to run offices in two states, and was helping his elderly mother. He says in the midst of all those events, his car, which contained the M.G. estate file, was stolen. He says there is no allegation that any of the heirs received less money than they should have in the absence of his misconduct. He says he cooperated fully with the disciplinary process and freely entered into the stipulation. He says while he questions the validity of the criminal charges he does not question the fact that he did violate this court's rules of professional responsibility.

¶33 Attorney Morse describes himself as "an upstanding member of the community, a highly competent attorney, a good person, and a beloved family member." While he agrees that his back pain did not directly cause the misconduct, he says "there

13

is good reason to conclude that adding pain, medication, and sleep deprivation to an otherwise high-stress period in Attorney Morse's life temporarily eroded his good judgment." He says that he has already been sanctioned by virtue of the criminal conviction. He says the Florida attorney regulatory authorities were notified about this case, his law license has been suspended in Florida, and it appears all but certain that he will be disbarred there. He notes that this case has been the subject of newspaper articles, which have caused him embarrassment. He says he is remorseful. He says he is not appealing the sentence in the criminal case, but he is appealing whether the transfers he made as personal representative constitute the crime of theft under Wis. Stat. § 943.20(1)(b).[6]

¶34 Attorney Morse cites a number of cases in which attorneys who mishandled or converted client funds received sanctions less than a two-year suspension. Attorney Morse argues that the two-year suspension recommended by the referee "is drastic overkill."

¶35 Attorney Morse faults the referee for saying that Attorney Morse, as part of the plea agreement, agreed "not to practice law for a period of two years." Attorney Morse says the actual terms of the plea agreement were that he would not oppose the State's request for such a condition. While he says

---

[6] The court of appeals affirmed the judgment of conviction. State v. Morse, 2018AP1293, unpublished slip op. (Wis. Ct. App. Mar. 19, 2019). No petition for review was filed.

14

if the sentencing court had imposed that condition he would have complied with it, he asserts his attorney advised him it was improbable the condition would be imposed and indeed it was not.

¶36 Attorney Morse also faults the referee for attaching significance to the fact that Attorney Morse failed to turn over estate records when ordered to do so by the probate court. He says those findings by the referee overlooked the fact that Attorney Morse's car, with the estate file in it, had been stolen, which left him with no ability to provide the estate records. While he says the referee is also correct that he did not make payment to the heirs until a court ordered him to do so, that was because he did not know what amount to pay. He says it is undisputed that once Attorney Larson provided his accounting to the probate court, Attorney Morse promptly paid the amount ordered. Attorney Morse says while the referee does not indicate to what degree the terms of the plea agreement and the failure to turn over records and make repayment to the estate played a role in the recommendation for a two-year suspension, to the extent those factors are cited at all, they are inconsistent with the evidence.

¶37 The OLR argues that a two-year suspension is an appropriate sanction for Attorney Morse's admitted misconduct. The OLR notes that the primary goals of attorney discipline are to address the seriousness of the misconduct; to protect the public, courts, and the system from repetition of misconduct; to impress upon the attorney the seriousness of the misconduct; and to deter other attorneys from engaging in similar misconduct.

15

_In re Disciplinary Proceedings Against Arthur_, 2005 WI 40, ¶78, 279 Wis. 2d 583, 694 N.W.2d 910. The OLR says the referee's report was extremely thorough and well-reasoned.

¶38 The OLR says that Attorney Morse misappropriated more than $25,000 of the estate's funds for his own personal use. The OLR notes that while in his brief Attorney Morse tries to recast his criminal conversion of estate funds as a "harmless convenience" that lacked any dishonest or selfish motive, at the sanctions hearing he agreed that the mishandling of the funds involved intentional acts and was not just a function of sloppy recordkeeping.

¶39 The OLR says while Attorney Morse now complains that he was unable to calculate the amount due to the estate and was unable to furnish estate records because the estate files were in his stolen car and he no longer had access to the estate bank accounts after Attorney Larson replaced him as personal representative, Attorney Morse did not advance either of those arguments at the order to show cause hearing before the probate court. The OLR also says Attorney Morse fails to identify where in the referee's report the referee attributed undue weight to those facts. The OLR says even if the referee had given undue weight to the facts, it is unclear why such reliance would be inappropriate given that Attorney Morse stipulated to a misconduct count of failing to abide by the probate court's order to turn over to Attorney Larson all financial records pertaining to the estate.

16

¶40 The OLR goes on to argue that the estate was vulnerable to Attorney Morse's predatory conversions because he was unsupervised. It points that Attorney Morse had substantial experience in the practice of law when he agreed to handle M.G.'s estate. The OLR says Attorney Morse's conduct was not just unethical, it was illegal, as evidenced by the criminal conviction.

¶41 The OLR argues that Attorney Morse presented no medical evidence that his back pain caused him to commit misconduct so that cannot be considered a mitigating factor. While Attorney Morse says he was under stress at the time of the misconduct, the OLR says he again presented no medical evidence that the stress caused him to embezzle from the estate or commit any of the other admitted misconduct. The OLR says it does not generally dispute Attorney Morse's position that he has been cooperative with the disciplinary process. However, the OLR observes that Attorney Morse's willingness to enter into the misconduct stipulation occurred only after the conclusion of the criminal case.

¶42 The OLR acknowledges that the referee found Attorney Morse to appear genuinely remorseful at the sanctions hearing. The OLR says while it generally agrees with that conclusion, it says the remorse does not appear to be categorical because while Attorney Morse may not have appealed his sentence, he did appeal his conviction, continuing to question whether his actions constituted a crime. The OLR argues that Attorney Morse's

17

attack on the criminal conviction undercuts his claims of remorse and acceptance of responsibility for his actions.

¶43 The OLR agrees with the referee that the fact situation at issue here is similar to that presented in Krezminski and warrants a similar sanction, i.e. a two-year suspension. The OLR argues that Attorney Morse's proposed discipline of either a public reprimand or a 60-day suspension seriously undermines multiple goals of attorney discipline.

¶44 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶45 We conclude there has been no showing that any of the referee's findings of fact, which incorporate the terms of the parties' stipulation, are clearly erroneous. Accordingly, we adopt them. We further agree with the referee's conclusions of law that Attorney Morse violated the supreme court rules set forth above.

¶46 Turning to the appropriate level of discipline, although no two disciplinary proceedings are identical, we find this fact situation to be somewhat comparable to In re Disciplinary Proceedings Against Bauer, 2018 WI 49, 381 Wis. 2d 474, 912 N.W.2d 108. Attorney Bauer misused trust funds belonging to seven clients, transferred large sums of trust

18

account money from one client fund to another, but ultimately repaid all balances in the clients' accounts. Like Attorney Morse, Attorney Bauer had substantial experience in practicing law and had no prior disciplinary history. Like Attorney Morse, Attorney Bauer cooperated with the OLR and entered into a partial stipulation. The sums of money involved in Bauer were significantly greater than the instant matter, but in this case there was a criminal prosecution and conviction that did not exist in Bauer.

¶47 It appears that the referee may have accorded undue weight to the fact that, as part of the plea agreement in the criminal case, Attorney Morse agreed not to oppose the State's request for a condition of the sentence imposed that he not practice law for two years. For that reason, we conclude that a two-year suspension is excessive. However, acceding to Attorney Morse's request for either a public reprimand or a 60-day suspension would unduly depreciate the seriousness of the misconduct at issue here. It cannot be overstated that Attorney Morse converted estate funds to his own personal use, and his conduct resulted in a criminal conviction. After careful review of the matter, we conclude that a one-year suspension of his license to practice law is an appropriate sanction for his admitted misconduct. As is our usual custom, we find it appropriate to assess the full costs of the proceeding against him.

19

¶48 IT IS ORDERED that the license of Daniel W. Morse to practice law in Wisconsin is suspended for a period of one year, effective July 2, 2019.

¶49 IT IS FURTHER ORDERED that within 60 days of the date of this order, Daniel W. Morse shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $11,038.85 as of December 18, 2018.

¶50 IT IS FURTHER ORDERED that Daniel W. Morse shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶51 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See 22.29(4)(c).